So Ordered.

Dated: January 21, 2025



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

      Cindy G. Hammond,                    Case No. 24-20428-gmh

                                                  Chapter 13

      Debtor.

## OPINION AND ORDER

The trustee contends that the debtor's debt-adjustment plan must pay holders of secured claims interest calculated from the petition date. This opinion concludes otherwise.

I

The debtor commenced this chapter 13 case on January 31, 2024. About nine months later she amended her plan to address an objection filed by Marine Credit Union, which holds an allowed claim fully secured by the debtor's principal residence. The amended plan provides that the trustee will pay Marine's claim in full plus 15% interest on the amount that was not past due as of the petition date. ECF No. 75, at 2. The plan also provides that the trustee will pay Wollemi Acquisitions, LLC (the holder of an allowed claim fully secured by the debtor's vehicle) the entire amount of its claim

plus 9.5% interest. ECF No. 2, at 4; Claim No. 10-1. Both secured creditors have accepted the amended plan.

The trustee, however, objects to confirmation of that plan. The sole remaining ground for that objection is the trustee's contention that the debtor's payments to the trustee are insufficient to fund the plan's distributions to creditors. Counsel for the trustee explained at a hearing that the trustee's objection rises and falls on whether the plan pays interest on the secured claims from the petition date, as the trustee contends, or from the confirmation date, as the debtor argues.[1] The debtor's case has proceeded for almost a year, so if the plan is understood to pay interest on the secured claims starting at the petition date, then the plan is not confirmable because it does not require the debtor to submit sufficient funds to the trustee to make required distributions to creditors. See §§1322(a)(1) & 1325(a)(1).[2]

The parties agree that the plan's terms do not specify the date on which the trustee should begin calculating interest. They also agree that the plan should be read to provide for interest in the manner required §1325(a)(5)(B)(ii) (even though Marine's and Wollemi's acceptance of the plan makes compliance with that subsection unnecessary for confirmation purposes, see §1325(a)(5)(A)). Case No. 24-20838, ECF Nos. 58–59.

II

Section 1325(a)(5)(B)(ii)'s text resolves the parties' dispute. When §1325(a)(5)(B)(ii) applies, it requires the debtor to show that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such [allowed secured] claim is not less than the allowed amount of such claim". The answer to the parties' dispute over whether the plan must pay interest on secured

---

1. At the hearing, counsel for both parties referred the court to letter briefs on this issue filed in *In re Rhodes*, No. 24-20838, ECF Nos. 58–59 (Bankr. E.D. Wis.), and adopted those briefs in support of their positions in this case.

2. All statutory citations are to title 11 of the United States Code.

claims starting from the petition date or the plan's effective date (typically, the confirmation date) lies in the provision's formulaic inquiry—is (x), the value, as of the effective date of the plan, of future distributions to creditors, not less than (y), the allowed amount of the secured claim?

A

The first part of §1325(a)(5)(B)(ii)'s inquiry calls for a determination of "the value, as of the effective date of the plan" of the plan's distributions to holders of allowed secured claims. "[V]alue, as of the effective date of the plan", is a phrase the Bankruptcy Code employs repeatedly in its reorganization chapters and has a well-established meaning. See §1325(a)(4), (a)(5)(B)(ii), & (b)(1)(A); see also §1129(a)(7), (a)(9)(B) & (C), (a)(15); §1225(a)(4), (a)(5)(B)(ii) & (b)(1)(A). It requires determining the present value of the plan's future distributions as of the plan's effective date. *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 962 (1997). Determining the present value of those future distributions requires accounting for the time value of money—the principle that money received today is generally more beneficial than money received tomorrow—by discounting the value of future distributions to the plan's effective date. *Till v. SCS Credit Corp.*, 541 U.S. 465, 486–87 (2004) ("The requirement that the 'value' of the property to be distributed be determined 'as of the effective date of the plan' incorporates the principle of the time value of money.") (Thomas, J., concurring); see also *id.* at 473–74 (Stevens, J.).

Section 1325(a)(5)(B)(ii)'s plain text applies the present-value principle only to determine the value of future distributions to the creditor, **not** to determine the "allowed amount" of the creditor's secured claim. Thus, a plan that pays a creditor the full allowed amount of its secured claim on the plan's effective date need not pay more

to comply with §1325(a)(5)(B)(ii), because, in that case, there are no future distributions to be discounted.[3] See *Till*, 541 U.S. at 474 (Stevens, J.).

Most chapter 13 plans do not pay allowed secured claims in full on their effective date. Plans typically provide that the trustee will pay those claims through installment distributions over the plan term. To satisfy §1325(a)(5)(B)(ii), a debtor must show that when discounted back to the effective date of the plan, those installment distributions have a value that is not less than the allowed amount of the secured claim. *Rake v. Wade*, 508 U.S. 464, 472 n.8 (1993). The plan can satisfy the need to discount the value of future distributions by paying total distributions equaling the amount of the allowed claim *plus* interest on those distributions at an appropriate discount rate—colloquially known (and referred to here) as "*Till* interest":

> When a claim is paid off pursuant to a stream of future payments, a creditor receives the "present value" of its claim only if the total amount of the deferred payments **includes the amount of the underlying claim plus an appropriate amount of interest to compensate the creditor for the decreased value of the claim caused by the delayed payments**. This generally involves a determination of an appropriate discount rate and a discounting of the stream of deferred payments **back to the present dollar value of the claim at confirmation**.

*Id.* (citing 5 *Collier on Bankruptcy* ¶1325.06[4][b][iii][B] (15th ed. 1993)) (emphasis added).

---

3.  By requiring plans to distribute property whose present value on the plan's effective date equals the allowed amounts of secured claims, §1325(a)(5)(B)(ii) puts holders of allowed secured claims paid through the plan in a similar financial position as they would be in if the debtor surrendered the collateral to obtain confirmation under §1325(a)(5)(C):

    > The purpose of the present value requirement is to place the holder of an allowed secured claim in the same position economically as if the debtor exercised the option of surrendering the collateral. Through the payment of interest, the creditor is compensated for the delay in receiving the amount of the allowed secured claim, which would be received in full immediately upon confirmation if the collateral were liquidated.

    8 *Collier on Bankruptcy* ¶1325.06[3][b][iii][B] (16th ed. 2024), LexisNexis.

As should now be clear, *Till* interest need run only from the effective date of the plan, because §1325(a)(5)(B)(ii)'s text only requires the debtor to demonstrate that *as of that date* the value of the plan's future distributions is no less than the amount of the allowed secured claim. The Bankruptcy Code does not define "effective date of the plan". But, at least in the absence of clear plan language selecting a different date, a plan's effective date is the date it becomes operative, the date of confirmation:

> "Effective date of the plan" is among the Bankruptcy Code's clearer terms. In this context, "effective" plainly means "operative". *Webster's Third New International Dictionary* 724 (2002); see also *Black's Law Dictionary* (11th ed. 2019), Westlaw Edge ("in operation at a given time"). The plan is operative when its terms are binding on the debtor and creditors—i.e., when the court confirms it.

*In re Buettner*, 625 B.R. 78, 80 (Bankr. E.D. Wis. 2021) (explicating the same phrase as used in §1325(a)(4)) (first citing §1327(a); then citing *In re Cannella*, No. 14-21398, 2015 WL 1208679, at *2 (Bankr. D. Kan. Mar. 12, 2015); and then citing W. Homer Drake, Jr., et al., *Chapter 13 Practice & Procedure* §7:9 (2020), Westlaw).

As *Buettner* explains, precedent also generally requires construing "effective date of the plan" as the date on which the court confirms the plan, especially in the context of §1325(a)(5)(B)(ii) to which the parties here look for guidance:

> The Supreme Court, in reading § 1325, has twice treated "as of the effective date of the plan" as "when the plan is confirmed". In *Hamilton v. Lanning* the Court construed "as of the effective date of the plan" in determining whether the debtor's plan "provide[d] that all of the debtor's projected disposable income to be received during the applicable commitment period" would "be applied to make payments to unsecured creditors under the plan" as required by § 1325(b)(1)(B). The Court stated, "[Section] 1325(b)(1) directs courts to determine projected disposable income 'as of the effective date of the plan,' *which is the date on which the plan is confirmed and becomes binding*." 560 U.S. 505, 518 (2010) (emphasis added) (citing §1327(a)). The Court read the phrase the same way in *Rake v. Wade*, explaining that § 1325(a)(5)(B)(ii)—which requires that, "with respect to each allowed

secured claim provided for by the plan", "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim"—"guarantees that property distributed under a plan on account of a claim . . . equal[s] the present dollar value of such claim *as of the confirmation date*." 508 U.S. 464, 469 (1993) (emphasis added).

625 B.R. at 80; see also *Marshall v. Johnson*, 100 F.4th 914, 917 (7th Cir. 2024) (reading "payment to creditors under the plan" in §1326(b)(2) to "'address only payments made after a plan has been confirmed." (quoting *Goodman v. Doll (In re Doll)*, 57 F.4th 1129, 1145 (10th Cir. 2023))); W. Homer Drake, Jr., et al., *Chapter 13 Practice & Procedure*, §5:12 (2024), Westlaw ("Under these cases [*United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988), and *Rake v. Wade*], then, the effective date of the plan for purposes of payment of present value interest must be no earlier than the date of confirmation."); 7 *Collier on Bankruptcy* ¶1129.05[2][e] (16th ed. 2024), LexisNexis ("The relevant date for all determinations of present value required by the Code is the 'effective date' of the plan."); Keith M. Lundin, *Lundin on Chapter 13* §77.1, ¶6, https://lundinonchapter13.com/Content/Section/77.1 (last visited Jan. 17, 2025) ("For § 1325(a)(5)(B)(ii) purposes, 'effective date of the plan' is most reasonably understood to mean the date of confirmation.").[4] Regardless, the trustee does not dispute that a plan's distributions to creditors must be valued as of the plan's effective date or, what is the same, that the plan must pay *Till* interest in addition to distributions totaling the allowed amount of the claim.

---

4. One might reason that a plan can only designate an effective date other than the date of confirmation if there is a case-specific rationale, since §1327(a) makes the plan binding at confirmation. Cf. *In re Cherry*, 963 F.3d 717, 720 (7th Cir. 2020) ("A bankruptcy court may confirm a plan that holds property in the estate only after finding good case-specific reasons for that action."). This course might minimize the administrative burdens the trustee warns will result from rejecting his view that plans must pay interest on secured claims as of the petition date. Case No. 24-20838, ECF No. 59, at 6–7 (discussing the trustee's concern over administering plans with varying effective dates).

B

The second part of §1325(a)(5)(B)(ii)'s inquiry looks to the "allowed amount of such [secured] claim". Claims are allowed in amounts determined by applying §§501 & 502 and their implementing rules; the amounts of allowed secured claims are generally determined by applying §506(a) and its implementing rules. These chapter 5 provisions govern the allowed amount of a secured claim, including for purposes of confirming a chapter 13 plan under §1325, except when the Code expressly makes §506 inapplicable. See §103(a) (Subject to an irrelevant exception, "chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title".); §1325(a) (hanging paragraph). Section 1325(a)(5)(B)(ii)'s "allowed amount of [the secured] claim" thus means the amount of the claim determined by applying §§502 & 506 (when applicable). Section 502(b) requires that the amount of the debt be determined as of the petition date. If §506 applies to the claim and the debt amount exceeds the collateral's value, the amount of the allowed secured claim will depend on the value of the collateral, determined either as of the petition date or as of the date of confirmation. See §506(a). And, if §506 applies and the value of the collateral exceeds the value of the debt, §506(b) operates to increase the amount of the allowed claim to include the "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." Whatever the amount of an allowed secured claim as determined by applying §§502 & 506, §1325(a)(5)(B)(ii) requires for confirmation only a determination that the plan pays the holder of that secured claim installment payments plus *Till* interest from the plan's effective date that are not less than the allowed amount of that claim.[5]

---

5. When an allowed secured claim is for taxes, §511 requires interest at a rate set by nonbankruptcy law, rather than under *Till*'s principles, to determine the present value of plan distributions. §511(a) (Whenever the Code requires the debtor to "pay[ ] . . . interest to enable a creditor to receive the present value of the allowed amount of a tax claim", the debtor must pay the tax claim at the interest rate "determined under applicable nonbankruptcy law".).

The trustee contends, however, that the second part of §1325(a)(5)(B)(ii)'s inquiry requires determining the value of the allowed amount of the secured claim or the payment of *Till* interest from the petition date. According to the trustee, §1325(a)(5)(B)(ii) must be read to require payment of interest running from the petition date to compensate creditors for the time-value of money lost by having to wait until after plan confirmation to begin receiving distributions.

But nothing in §1325(a)(5)(B)(ii)'s text authorizes applying present value principles—or, what is the same, *Till* interest—to the "allowed amount of such [secured] claim". §1325(a)(5)(B)(ii). The text refers only to the "allowed amount" of the claim, not to "the value of that amount on the effective date of the plan" or something else that would signal a need to adjust to present value an amount determined earlier. Notably, if the trustee were correct, then §1325(a)(5)(B)(ii) would also require that a plan paying a secured claim in full through a lump-sum payment on the effective date tender more than the amount of the allowed claim to compensate for the delay between the petition date and confirmation. Such a conclusion is directly contrary to Justice Stevens's explanation in *Till* that §1325(a)(5)(B)(ii)'s "command is easily satisfied when the plan provides for a lump-sum payment to the creditor." *Till*, 541 U.S. at 474.

Justice Stevens's plurality opinion and Justice Thomas's concurrence both presume that §1325(a)(5)(B)(ii) asks whether discounted future distributions are at least equal to the amount of the allowed secured claim at confirmation, as determined through the claims-allowance process. Both opinions equate the amount of the allowed secured claim with the value of the collateral in the manner required by §506(a). See *Till*, 541 U.S. at 470, 486–91. Moreover, the Seventh Circuit similarly construed the phrase "value, as of the effective date of the plan" in §1129(a)(9)(C), stating, "[I]n our view, the critical phrase 'value, as of the effective date of the plan' means that proposed payments must be adjusted to allow for the changing value of a dollar. The proposed payments, once adjusted, **must equal the face value of the claim at the time the plan is**

confirmed—$14,500.55 in this case." *In re Burgess Wholesale Mfg. Opticians, Inc.*, 721 F.2d 1146, 1147 (7th Cir. 1983) (emphasis added).

Construing §1325(a)(5)(B)(ii) to require plans to pay *Till* interest from the petition date is also a poor fit with other Code provisions. As noted above, the "allowed amount" of a secured claim is determined by application of the Code's claims-allowance provisions, §§502 & 506. Section 502(b) provides that the court "shall determine the amount of [the] claim . . . as of the date of filing of the petition", and that section expressly excludes from the allowable amount of the claim any interest that has not matured by the petition date. See §502(b)(2) ("[T]he court . . . shall determine the amount of such claim . . . and allow such claim in such amount, except to the extent that— . . . (2) such claim is for unmatured interest . . . ."). Under §506(a) a secured claim is an allowed secured claim up to the value of the creditor's interest in the bankruptcy estate's interest in the collateral. And, as mentioned above, §506(b) authorizes adding post-petition interest to an allowed secured claim, but only to the extent that the value of the collateral securing the debt is greater than the amount of the debt. While the allowance of interest under §506(b) is distinct from the allowance of interest to compensate a claimholder for a delay in payment (e.g., contractual interest involves factors in addition to the rate of return sufficient to offset the time-value of delayed repayment), §506(b) reflects Congress's general policy choice that bankruptcy estates must only compensate holders of allowed secured claims for post-petition delays in paying those claims when there is sufficient equity in the collateral to support those payments. *Rake*, 508 U.S. at 468 ("It is generally recognized that the interest allowed by § 506(b) will accrue until payment of the secured claim or until the effective date of the plan." (citing 3 *Collier on Bankruptcy* ¶506.05 n.5c (15th ed. 1993))). Requiring plans to pay *Till* interest from the petition date on secured claims, regardless of the application of §506(b), would mean making debtors pay more on those claims than §1325(a)(5)(B)(ii) mandates and redirecting to secured creditors funds that should be

distributed to holders of unsecured claims. Nothing in §1325(a)(5)(B)(ii) justifies such an extra-statutory confirmation requirement.

III

In contending that §1325(a)(5)(B)(ii) requires chapter 13 plans to pay creditors interest from the petition date, the trustee relies on statements in *Till* and *In re Brill*, a 2006 opinion from this court; policy; and the trustee's long-standing practice. None of these, however, is persuasive.

A

In arguing that *Till*'s plurality opinion supports his contention that §1325(a)(5)(B)(ii) requires payment of interest on secured claims from the petition date, the trustee points to the following quotation:

> That provision, 11 U.S.C. § 1325(a)(5)(B), does not mention the term "discount rate" or the word "interest." Rather, it simply requires bankruptcy courts to ensure that the property to be distributed to a particular secured creditor over the life of a bankruptcy plan has a total "value, as of the effective date of the plan," that equals or exceeds the value of the creditor's allowed secured claim . . . § 1325(a)(5)(B)(ii).

Case No. 24-20838, ECF No. 59, at 2 (alteration in original) (quoting *Till*, 541 U.S. at 473–74). The trustee reasons from this that plans must pay interest starting on the petition date "to ensure that a secured creditor . . . receiv[es] the present value of its claim—that the value, as of the effective date of the plan, equals or exceeds *the value of its allowed secured claim*". *Id.* (emphasis added).

In context, however, the passage on which the trustee relies does not support him. As the plurality opinion reports, the amount of the allowed claim in *Till* was $4,000, based on the application of §506(b): the debtor owed $4,894.89 on the petition date, but the value of the vehicle securing that debt was $4,000. *Till*, 541 U.S. at 470 & n.5. And the plurality opinion expressly refers to that sum as the value that the plan must pay, stating that §1325(a)(5)(B)(ii) requires distributions having a total value "that

equals or exceeds the **value of the creditor's allowed secured claim—in this case, $4,000**." 541 U.S. at 474 (emphasis added). In context, the plurality opinion's substitution of "value of the creditor's allowed secured claim" for §1325(a)(5)(B)(ii)'s "amount of such [allowed secured] claim" is of no consequence. By stating that "value of the creditor's allowed secured claim" was **$4,000**, i.e., the amount of the allowed secured claim under §506(b), the opinion makes clear that its use of "value of the creditor's allowed claim" means no more than the "amount of such [allowed secured] claim". *Id.* at 470.

This reading is reinforced, moreover, by the very next passage, which states that §1325(a)(5)(B)(ii)'s "command is easily satisfied when the plan provides for a lump-sum payment to the creditor." *Till*, 541 U.S. at 474. Answering whether a lump-sum is equal to or greater than the amount of an allowed claim is easy. But answering whether a lump sum is equal to or greater than the present value at confirmation of the allowed claim amount as of the petition date would require the application of a discount rate, thus presenting the same issue for which there was no majority answer in *Till*. *Till*, therefore, does not support the trustee's effort to read §1325(a)(5)(B)(ii) to require plans to pay interest on secured claims as of the petition date.

B

The trustee also relies on *In re Brill*, apparently the foundation for a "longstanding procedure" of calculating §1325(a)(5) interest from the petition date. 350 B.R. 853 (Bankr. E.D. Wis. 2006). In *Brill*, however, the court was not asked to determine when interest must commence for purposes of §1325(a)(5)(B)(ii), and while its dicta is arguably consistent with the trustee's procedure, the record shows that after the *Brill* opinion issued, the parties proceeded by agreement on a plan that paid *Till* interest starting effectively at plan confirmation.

In *Brill* the debtor and a secured creditor disputed whether §1325(a)(5)(B)(ii) requires a plan to pay *Till* interest on an allowed secured claim for a zero-percent car

loan made within 910 days of the petition date. The debtor argued that the plan should not have to pay *Till* interest because the creditor agreed to lend the funds without interest. The court ruled otherwise. It reasoned that §1325(a)(5)(B)(ii) required the payment of *Till* interest to ensure that distributions under the plan at least equaled the amount of the allowed secured claim, stating, as the trustee emphasizes now: "[I]f the plan proposes to pay the secured claim in installments over time, the *Till* rate of interest must be added to the payment to arrive at the present value of the claim." *Id.* at 856. The trustee concludes from this that *Till* interest must run from the petition date.

*Brill*'s ultimate directive and the course of the subsequent proceedings, however, do not support that conclusion. *Brill* directed, "The debtors shall have 30 days to file a modified plan to **pay** [secured creditor] GMAC the entire **balance of its claim as of the petition date**, plus **interest** at the 'prime rate plus risk factor' **over the life of the plan**." *Id.* (emphasis added). The proceedings that followed show that neither the parties nor the court contemplated that *Till* interest would begin to run from the petition date.

The debtors' initial plan, which the debtor filed before GMAC had filed a proof of claim, provided that the trustee would pay GMAC's full secured claim in the amount of $14,952, through monthly payments of $267 with 0% interest. *Id.* at 854; see also Case No. 06-21600, ECF No. 10, at 4. GMAC's proof of claim stated a total amount of $16,854.79, alleging $13,221.28 was due on the petition date and claiming $3,633.51 as post-petition interest at a rate of 10%. Case No. 06-21600, Claim No. 3-1.

Following the *Brill* ruling, the debtors modified their plan to pay the full principal amount of GMAC's claim as of the petition date, $13,221.28, plus 8% interest. Case No. 06-21600, ECF No. 44, at 4. They also filed a claim objection to contest GMAC's assertion of post-petition interest at a rate of 10%, observing that they had modified their plan to pay GMAC's claim with interest at a rate of 8%, "reflect[ing] the prime rate at the time of filing the petition of 7.75% per annum and a risk factor for nonpayment of .25% per annum". Case No. 06-21600, ECF No. 46, at 1. The debtors' modified plan

stated, "**After confirmation of the plan**, the Trustee will pay to the holder of each allowed secured claim the monthly payment . . . based upon the amount of the claim . . . **with interest at the rate stated**". Case No. 06-21600, ECF No. 44, at 4 (emphasis added).

After all this, the parties agreed that GMAC would be entitled to "post-petition interest . . . at 8.75% per annum." Case No. 06-21600, ECF No. 53, at 1. This agreement was reported at a November 20, 2006 hearing, the minutes from which state that GMAC would file an amended proof of claim, presumably because, at the time, at least some secured creditors took the position that the proof of claim controlled over the terms of the plan as to amounts of the claim and the interest to be paid. *Id.*, see also *In re Smith*, No. 06-20127, 2007 WL 1544366, *11–13 (Bankr. E.D. Wis. May 29, 2007). GMAC's subsequently filed amended proof of claim, renumbered as claim number 5-1, states that the debtors owed $13,221.28 on the petition date and alleges, "PLAN INTEREST: $3,149.72 (8.75% simple db) Based on 60 months in plan." Case No. 06-21600, Claim No. 5-1, at 1. GMAC attached a printout showing interest calculated from November 20, 2006, the date GMAC's "replacement claim" was signed by its attorney. *Id.* at 1–2. The court's December 2006 order confirming the plan states (without any explanation in the record, as was then common), "Effective Date: November 29, 2006". Case No. 06-21600, ECF No. 54, at 1. And when the debtors later sought to modify the confirmed plan—a request that the court granted—they listed GMAC's claim in the amount of $16,371, with "8.75% [interest] already included in the claim" and monthly disbursements of $267. Case No. 06-21600, ECF No. 63, at 4; see also Case No. 06-21600, ECF No. 71.

Ultimately, the trustee's final report in *Brill* shows that he paid GMAC $16,371, the amount its November 21 proof of claim alleged with interest added at a rate of 8.75%, as the parties subsequently agreed would be paid through the plan. Compare Case No. 06-21600, ECF No. 103, at 2 (final report showing $16,371 paid to GMAC), with Case No. 06-21600, Claim No. 5-1 (showing calculation of $13,221.28 principal paid over 60 monthly payments, plus 8.75%, for monthly payments of $272.85 totaling $16,371).

The *Brill* record, therefore, does not support a practice of calculating *Till* interest from the petition date, rather than from the plan's effective date.

*Brill*'s dictum thus offers little support for the trustee's contention that §1325(a)(5)(B)(ii) requires plans to pay claims with interest from the petition date. 350 B.R. at 855. And, even if *Brill* truly contemplated the application of *Till* interest from the petition date, it did so in a case presenting only the question of whether the payment of *Till* interest was required at all, without thoroughly considering the starting point for calculating that interest, at a time when local practice addressing the interplay between claims allowance and payment through chapter 13 plans differed significantly from now, and where the parties seemed to have agreed without contest that *Till* interest commenced with plan distributions on the claim's principal amount. *Brill* thus does not support the trustee's contention that §1325(a)(5)(B)(ii) requires plans to pay *Till* interest from the date of the petition.

C

The trustee's other reasons for contending that plans must pay interest from the petition date are policy—to ensure secured creditors are compensated for any delay between the petition and plan confirmation—and long-standing practice. He says, "Unless [secured] creditors are paid interest commencing as of the date of filing of the petition, they will not receive the present value of their claims. The value of property to be distributed under the plan on account of their claims will be less than the allowed amount of such claims, which were determined as of the filing of the petition, not as of the effective date of the plan." Case No. 24-20838, ECF No. 59, at 5. This is true, at least for undersecured claims and those to which §506 does not apply. But that is the effect of §1325(a)(5)(B)(ii)'s text, which, again, only requires payments that have a present value at least equal to the amount of the allowed secured claim as determined under §§502 & 506. Nothing in the Bankruptcy Code—certainly not §1325(a)(5)(B)(ii)—imposes a requirement that chapter 13 plans compensate all undersecured creditors for payment

delays between a debtor's filing of a petition and confirming a plan.

The trustee also reports, "For approximately twenty . . . years, since proofs of claim ceased including precalculated interest, the Trustees in this District have calculated interest based on the date of filing of the petition, which includes accounting for interest that accrues between the petition date and the confirmation date, as well as subsequent to confirmation." Case No. 24-20838, ECF No. 59, at 6. The trustee contends that this "longstanding procedure . . . is consistent with the law" and that "the petition date is the most logical date to use" to start the *Till* interest calculation "because a proof of claim represents the balance of the debt on the petition date." *Id.*

Contrary to all of this is the statute's clear text and plain presumption by all of the opinions in *Till* that chapter 13 plans become effective at confirmation, and *once effective*, distributions to holders of allowed secured claims must have a present value equal to the allowed amounts of those claims. As discussed above, whether the allowed amount of a secured claim equals the debt due on the petition date depends on the application of §506 and whether the value of the collateral exceeds the amount of the debt—only then does the Code authorize the addition of post-petition interest.[6] See

---

6. Section 1325(a)(4)'s liquidation test also does not require calculating *Till* interest from the petition date, contrary to the trustee's suggestion. Case 24-20838, ECF No. 59, at 6. The "liquidation test" required for confirmation by §1325(a)(4) provides that the court shall only confirm a plan if

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

Unlike §1325(a)(5)(B)(ii)'s inquiry into whether discounted plan distributions are not less than the amount of allowed secured claims, §1325(a)(4) asks whether the plan's similarly discounted distributions to holders of allowed unsecured claims is not less than the amount holders of those claims would receive if the debtor's estate were liquidated under chapter 7 on the plan's effective date. If the hypothetically liquidated estate would have sufficient distributable funds, holders of allowed unsecured claims would receive "payment of interest at the legal rate from the date of filing of the petition" by operation of §726(a)(5). So, in that circumstance, the §1325(a)(4) inquiry would require the

§506(b); see also *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989).

The Code generally contemplates prompt action on confirmation of chapter 13 plans. See §1324(b). And while litigation demands and other considerations at times delay plan confirmation, the Code affords undersecured creditors remedies other than interest to address delay, including dismissal under §1307(c)(1) when the delay is "unreasonable" and "prejudicial to creditors". In the case of an unusually lengthy delay, a secured creditor might also challenge whether the debtor has filed the plan or the case in good faith. §1325(a)(3); see also *In re Love*, 957 F.2d 1350, 1354–55 (7th Cir. 1992); *In re Smith*, 848 F.2d 813, 820–22 (7th Cir. 1988). The trustee's policy concerns— which in all events do not justify rewriting §1325(a)(5)'s text—are at least mitigated by other Code provisions.

## IV

The court thus construes the debtor's plan to provide for payment of the allowed secured claims with interest (at rates accepted by the secured creditors) beginning on the date of plan confirmation, which is the effective date of the debtor's plan, and nothing in §1325(a)(5)(B)(ii) would require a different outcome, even if it were applicable.

## V

For the reasons stated above, IT IS HEREBY ORDERED as follows: the trustee's October 9, 2024 objection to confirmation, as limited by the trustee's counsel at the

---

plan to pay holders of allowed unsecured claims sums having a present value at the effective date that at least equals the total amount of allowed unsecured claims, plus interest "at the legal rate", i.e., either the nonbankruptcy or judgment rate (compare *In re Hicks*, 653 B.R. 562, 572–73 (Bankr. N.D. Ill. 2023) (nonbankruptcy rate), with *In re Shoen*, 176 F.3d 1150, 1166 & n.12 (9th Cir. 1999) (federal judgment rate)), rather than the *Till* rate. Cf. *In re Fesco Plastics Corp., Inc.*, 996 F.2d 152, 156 (7th Cir. 1993) (Holders of allowed unsecured claims against insolvent chapter 7 estate are not *entitled* to interest to compensate them for distribution delay.). As a result, the application of *Till* interest in the §1325(a)(4) context is limited to ensuring that the value of the plan's future distributions to holders of allowed unsecured claims is at least equal to the total amount they would have received in a liquidation under chapter 7 on the plan's effective date.

December 17, 2024 hearing, is overruled. The January 28, 2025 hearing is canceled.

# # # # #